UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:

PETLAND DISCOUNTS, INC.
*d/b/a* ALL PET DISTRIBUTORS,

                          Debtor.
------------------------------------------------------------x
ALLAN B. MENDELSOHN, *as Trustee of the
Estate of Petland Discounts, Inc.*,

                         Plaintiff,

           -against-

CENTRAL GARDEN & PET CO.,

                         Defendant.
------------------------------------------------------------x

Case No.: 8-19-72292-reg

Chapter 7

Adv. Pro. No.: 20-08088-reg

## MEMORANDUM DECISION DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

       The matter before the Court is a motion for summary judgment ("Motion") to dismiss an adversary proceeding commenced in the case of Petland Discounts, Inc. ("Debtor").  Allan B. Mendelsohn, the chapter 7 trustee ("Trustee" or "Plaintiff") filed the complaint under 11 U.S.C. §§ 547 and 550 to avoid and recover a preferential transfer.  Central Garden and Pet Co. ("Defendant") filed the Motion seeking to dismiss the preference action on two separate grounds: (i) improper venue pursuant to 28 U.S.C. § 1409(b), and (ii) an ordinary course of business defense pursuant to 11 U.S.C. § 547(c)(2)(A).  The Motion is opposed by the Trustee.  In deciding the Motion, the Court first must determine whether it will apply the plain language of 28 U.S.C. §1409(a) and its exceptions set forth in (b) and (d) as written, which would compel the Court to find that venue of the adversary proceeding is proper in this Court.  The Defendant

urges the Court to follow a line of case law that either reads proceedings "arising in" and "arising under" as overlapping jurisdictional categories or looks to legislative history and other sources to apply the statute in a manner that is inconsistent with the actual language, but hews to what some courts believe is consistent with the intent of Congress.

28 U.S.C. § 1409 is the venue statute for proceedings taking place in a bankruptcy case. Congress clearly enacted a sweeping provision in subsection (a) establishing proper venue for all bankruptcy proceedings, including adversary proceedings, in the district where the underlying bankruptcy case is pending.  This broad grant of venue was included to ensure that bankruptcy estates would be handled as efficiently as possible for the benefit of the estate and its creditors. It stands in sharp contrast to the venue requirements for federal proceedings in general, which give deference to a defendant's place of business if they have limited or no connection with the plaintiff's choice of venue.  This grant of venue in the bankruptcy court is restricted only by the limited exceptions delineated in subsections (b) and (d) which provide instances where actions must be brought in a non-debtor's home court.  The specific language of subsection (b) clearly and unambiguously applies only to proceedings brought by the trustee that "arise in" or "relate to" title 11, subject to certain monetary limits.  Notably, this exception omits actions that "arise under" title 11, leaving these actions to be governed entirely by § 1409(a).

It is beyond question that a preference action "arises under" title 11.  Thus, a plain reading of § 1409(a) and (b) compels the Court to conclude that venue of this proceeding is proper in the Eastern District of New York as it falls squarely within § 1409(a), and neither of the exceptions set forth in this subsection apply.  The Court recognizes that some courts have concluded that subsection (b) applies to small – dollar preference actions such as this, and therefore venue in this Court would be improper, as the Defendant is neither incorporated in New

York, nor is New York its primary place of business. Although these courts have employed various tactics to limit the considerable scope of § 1409(a), the Court respectfully disagrees with their reasoning. Because § 1409(b) makes no reference to proceedings arising under title 11, this exception applies to a small subset of proceedings a trustee may bring. Referring to legislative history, outside sources or commentary to infer that Congress meant to exclude more from § 1409(a) has no place in this analysis. Congress created bankruptcy courts to act as judicial officers, not legislators. It is not this Court's province to add language to a statute in order to conform it to what it believes Congress may have intended. Any potential statutory drafting errors should be left for Congress, not bankruptcy courts, to alter or amend. Thus, the Court denies the Motion with regard to venue.

The Defendant's second argument is premised on the ordinary course of business exception under § 547(c)(2)(A). This Court has previously held that the ordinary course of business exception requires a subjective, fact-intensive inquiry. In the instant action, the Trustee has had no opportunity to assess the validity of the allegations asserted by the Defendant. The business transaction at issue was between the Defendant and the Debtor, not the Trustee. Hence, the Defendant's ordinary course of business defense is not ripe for summary judgment as a determination on the merits is not warranted at this time. For these reasons and the reasons set forth below, the Court denies the Motion in its entirety.

### *Procedural History and Facts*

On March 28, 2019 ("Petition Date") the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code. The Trustee was subsequently appointed as trustee. On June 18, 2020 the Trustee, represented by counsel, initiated this adversary proceeding by filing a

complaint against the Defendant.  ["Complaint", ECF No. 1].  The Defendant filed an answer on September 2, 2020.  [ECF No. 9].

On November 12, 2020, the Defendant filed the Motion along with a memorandum of law in support [ECF Nos. 14 and 16].  The Trustee filed a memorandum of law in opposition on December 10, 2020.  [ECF No. 19].  The Defendant submitted reply papers on December 14, 2020 [ECF No. 21].  A hearing on the Motion was held on December 16, 2020, at which time this matter was taken under submission.

The following facts are not in dispute.  The Defendant is a Delaware corporation with California as its primary place of business.  Prior to the Petition Date, the Defendant sold pet supplies to the Debtor.  Within ninety days of the Petition Date, on or about December 11, 2018, the Debtor issued a check to the Defendant in the amount of $11,408.85 ("Transfer") for the purchase of pet supplies.  Complaint at 3.  The Debtor made the Transfer 95 days after the invoice date.  The check was subsequently negotiated by the Defendant, on or about December 29, 2018, giving rise to the preference claim.  Complaint at 3.  On April 18, 2019, the Defendant filed a proof of claim in the amount of $191,066.64 for goods shipped to the Debtor prepetition.

The Complaint contains two causes of action.  In the first cause of action, the Trustee seeks to avoid the Transfer as a preferential payment under Bankruptcy Code § 547.  In the second cause of action, the Trustee seeks to recover from the Defendant the value of the Transfer for the benefit of the Debtor's estate pursuant to Bankruptcy Code § 550.  In the answer, the Defendant alleges that venue of this adversary proceeding is not proper in the Eastern District of New York under 28 U.S.C. § 1409(b) because the Trustee seeks to recover a debt of less than $25,000, and because the Defendant is neither incorporated in New York nor is New York its primary place of business.  Therefore, the action falls within the "small dollar exception" which

requires the Trustee to bring certain proceedings in the defendants' home court instead of the bankruptcy court where the Debtor's case is pending.  Defendant also alleges that the defense of ordinary course of business applies to the Transaction as a matter of law.  The Defendant now seeks dismissal of the Complaint as a matter of law on these two bases.

As set forth below, resolution of the venue issue requires the Court to determine whether it will apply a statute, in this case, § 1409(a) and its exceptions set forth in (b) and (d), as it is written, or whether this Court agrees with other courts that have examined the legislative history and determined that the statute should be applied in a manner that they find to be more consistent with what Congress may have intended.  Specifically, this Court will address whether venue of this adversary proceeding is proper before this Court, or whether subsection (b) of 28 U.S.C. § 1409 applies, rendering the current venue of this adversary proceeding improper.  If venue is found to be improper, the Defendant requests that this Court dismiss the adversary proceeding.[1] The secondary issue for the Court to address is whether, as a matter of law, the Defendant has adequately proven that it is entitled to rely on the ordinary course of business defense to defeat the Complaint.

While the dollar amount involved in this adversary proceeding is rather small, the issues raised by the parties require the Court to analyze many facets of procedural law, jurisdictional issues and to consider the role of the Judiciary when interpreting statutes.  Before addressing the merits of the Motion, a discussion of the standard for granting summary judgment, bankruptcy court jurisdiction, preference actions, and the canons of statutory construction is warranted.

---

[1] The Bankruptcy Court may either dismiss such proceeding or transfer venue of a proceeding in its discretion. Fed. R. Bankr. P. 7012(b), 7019(2), 7087, 28 U.S.C. § 1412.

*Discussion*

### I.    *Summary Judgment Standard*

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Some alleged factual dispute" is not enough; "the requirement is that there be no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247–48 (1986).  A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id*. at 248.  Facts are material where their resolution might affect the outcome of the suit under the governing law.  *Id*.  Once the moving party shows that there are no issues of fact that could affect the outcome, the burden then shifts to the non-moving party to show specific, admissible evidence of a genuine, material dispute.  Fed. R. Civ. P. 56(c).  "The mere existence of a scintilla of evidence" in support of the non-moving party is not sufficient to show a genuine issue of material fact.  *Anderson*, 477 U.S. at 252.  All reasonable inferences must be drawn in the non-movant's favor, but speculative or conclusory statements are insufficient to defeat a motion for summary judgment.  *Major League Baseball Properties, Inc. v. Salvino, Inc*., 542 F.3d 290, 310 (2d Cir. 2008) (other citations omitted).

### II.    *Bankruptcy Court Jurisdiction*

Bankruptcy court jurisdiction extends to all civil proceedings "arising under," "arising in," and "related to" title 11.  *See* 28 U.S.C. § 1334(a); *see also N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 485 U.S. 50, 54 (1982) (discussing the broad grant of jurisdiction to bankruptcy courts emanating from the Bankruptcy Act of 1978).  This grant of jurisdiction allows bankruptcy courts to hear a multitude of cases including those with claims based on issues

of state law in addition to federal law.  *See id.*  The phrases codified in § 1334(a), "arising in" "related to" and "arising under," are terms of art that designate the distinct types of proceedings which bankruptcy courts may hear.  *See Ehrlich v. Am. Express Travel Related Servs. Co. (In re Guilmette),* 202 B.R. 9, 11 (Bankr. N.D.N.Y. 1996) (citing to *In re Van Huffel Tube Corp.*, 71 B.R. 155, 156 (Bankr. N.D. Ohio 1987)).  These terms are not to be used interchangeably as each has its own precise meaning.  *See id.*

"Arising under" jurisdiction pertains to actions which are based upon substantive, statutory rights created by the bankruptcy code itself.  *See Browning v. Levy,* 283 F.3d 761, 772–73 (6th Cir.2002) (holding that "arising under" jurisdiction exists where one invokes a substantive right created by federal bankruptcy law); *Wood v. Wood (In re Wood),* 825 F.2d 90, 96 (5th Cir. 1987) (finding that "Congress used the phrase 'arising under title 11' to describe those proceedings that involve a cause of action created or determined by a statutory provision of title 11").  In other words, these proceedings have no basis outside of title 11 and exclude non-bankruptcy rights incorporated into the code by reference.  "Arising in" jurisdiction is limited to a "residual category of proceedings, having an existence only because of the bankruptcy case and not based on title 11 causes of action."  *Webster v. Republic Nat'l Distrib. Co., LLC (In re Tadich Grill of Wash. DC LLC)*, 598 B.R. 65, 69 (Bankr. D.D.C. 2019).  These are proceedings that could only arise in a bankruptcy case and would have no existence outside of a bankruptcy case.  *Perkins v. LVNV Funding, LLC (In re Perkins)*, 533 B.R. 242, 246 (Bankr. W.D. Mich. 2015) (citing *Mich. Emp't Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1144 (6th Cir. 1991) (other citations omitted)).  Examples of proceedings which "arise in" bankruptcy cases include orders to turn over property of the bankruptcy estate, the claims objection process and proceedings to determine the validity, priority or extent of liens.  *Moyer v.*

*Bank of Am. (In re Rosenberger)*, 400 B.R. 569, 573 (Bankr. W.D. Mich. 2008) (other citations omitted). "Related to" jurisdiction is the most attenuated of the three. The Supreme Court has stated that "[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n. 6 (1995). The Second Circuit has held that "a civil proceeding is related to a title 11 case if the action's outcome might have any conceivable effect on the bankrupt estate." *SPV OSUS, Ltd. v. UBS AG*, 882 F.3d 333, 339–40 (2d Cir. 2018) (citation omitted).

The terms "arising under" and "arising in" are not interchangeable. This Court respectfully disagrees with the courts in *Creditors' Trust v. Crown Packaging Corp. (In re Nukote Intern., Inc.)*, 457 B.R. 668, 671 (Bankr. M.D. Tenn. 2011) and *Muskin, Inc. v. Strippit, Inc. (In re Little Lake Indus.)*, 158 B.R. 478 (B.A.P. 9th Cir. 1993), which opine that these terms are "linguistically similar" and capable of overlap. To treat these terms as synonymous would defeat the Congressional intent behind § 1334 in which Congress conferred broad but distinct jurisdictional powers upon bankruptcy courts. *See In re Van Huffel Tube Corp.*, 71 B.R. 155, 156–57 (Bankr. N.D. Ohio 1987) (referring to 11 U.S.C. § 1334 and 28 U.S.C. §157 which distinguish between "arising under," "arising in," and "related to" jurisdiction).

## III.    *Preference Actions*

A preference action usually encompasses a two-step process as provided by §§ 547 and 550. First, the trustee must use § 547 to "avoid any transfer of an interest of the debtor in property." *See* 11 U.S.C § 547(b). Thereafter, § 550 is often used to recover the value of the §

547 avoidance action from the transferee.[2]  *See* 11 U.S.C § 550(a).  "The relationship between Code §§ 547(b) and 550(a) is symbiotic."  *Banner v. S.S. Pierce Co. (In re Pine Springs Farm & Casino),* 139 B.R. 90, 94 (Bankr. N.D.N.Y. 1992).  The former allows the movant to specify which transfer may be avoided and the latter indicates how recovery may be had.  *See id.*

Preference actions arise by operation of title 11 and confer upon the movant substantive, statutory rights.  *See Straffi v. Gilco World Wide Mkts. (In re Bamboo Abbott, Inc.)*, 458 B.R. 701 (Bankr. D.N.J. 2011); *see also Glinka v. Fed. Plastics Mfg. (In re Housecraft Indus. USA, Inc.)*, 310 F.3d 64 (2d Cir. 2002) (holding a fraudulent transfer action "arises under" title 11 while citing to cases that hold preference actions fall within the Court's "arising under" jurisdiction).  Thus, both the avoidance under § 547 and the recovery under § 550 are subject to the bankruptcy court's "arising under" jurisdiction.  *See In re Tadich Grill of Wash. DC LLC*, 598 B.R. at 67; *Klein v. ODS Techs., LP (In re J & J Chemical, Inc.)*, 596 B.R. 704 (Bankr. D. Idaho 2019); *Redmond v. Gulf City Body & Trailer Works, Inc. (In re Sunbridge Capital, Inc.)*, 454 B.R. 166 (Bankr. D. Kan. 2011); *In re Bamboo Abbott, Inc.*, 458 B.R. at 705; *In re Rosenberger*, 400 B.R. at 573; *In re Guilmette*, 202 B.R. at 12; *In re Van Huffel Tube Corp.*, 71 B.R. at 156.

## IV.    Rules of Statutory Construction

The preeminent canon of statutory interpretation requires a court to "presume that a legislature says in a statute what it means and means in a statute what it says there."  *Connecticut*

---

[2] Section 550 provides, in relevant part:
    (a)  Except as otherwise provide in this section, to the extent that a transfer is avoided under section . . 547 . . . the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from –
        (1)  the initial transferee of such transfer. . . .
11 U.S.C. § 550.

*Nat. Bank v. Germain*, 503 U.S. 249, 253-54 (1992) (citations omitted).  A party seeking to defeat the plain meaning of Bankruptcy Code text bears an exceptionally heavy burden. *Patterson v. Shumate*, 504 U.S. 753, 760 (1992).  If the text of a statute is found to be unambiguous, the Court need not undertake further inquiry.  *See Connecticut Nat. Bank*, 503 U.S. at 254 (citations omitted).

The Court interprets all federal statutes according to their plain meaning.  *Tyler v. Douglas*, 280 F.3d 116, 123 (2d Cir. 2001), *cert. denied*, 536 U.S. 906 (2002).  In determining its degree of ambiguity or clarity, courts are obliged not to examine statutory language in isolation. *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 423 (2d Cir. 2005) (citing *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)).  A court should consider the specific context in which that language appears and the statutory scheme's broader framework, striving to preserve the coherence and consistency of a statutory scheme.  *United States v. Ron Pair Enters.*, 489 U.S. 235, 240–41 (1989) (citing *N. Pipeline Constr. Co.*, 458 U.S. at 52–53).  If plain, the language of a statute shall be dispositive and conclusive.  *Carcieri v. Salazar*, 555 U.S. 379, 388 (2009). "Ambiguity only exists so long as several plausible interpretations of the same statutory text, which are different in substance, can be advanced."  *Stern v. American Home Mortgage Servicing, Inc.* (*In re Asher*), 488 B.R. 58, 64 (Bankr. E.D.N.Y. 2013) (first citing *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 566–67 (2005); and then citing *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 108–09 (2d Cir. 2012)).  Moreover, the Court should, wherever possible, construe statutes so that they fit into a harmonious whole.  *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.,* 529 U.S. 385, 389 (2000) (other citations omitted).  The Court is also charged with giving meaning to every clause and word of a statute, if possible.  *Chickasaw Nation v. U.S.*, 534 U.S. 84, 93 (2001) (citations omitted).

Only if the language of a statute is ambiguous should the Court take into consideration legislative history and the public policy underlying a statute.  *Greenery Rehabilitation Group, Inc. v. Hammon*, 150 F.3d 226, 231 (2d Cir. 1998).  When unambiguous, the Court may not use legislative history to alter or amend the plain meaning of a statute.  *See id.*  To do so would usurp the legislative authority vested in Congress.  Congress conferred authority in bankruptcy judges to serve as judicial officers, not legislators.  *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665 (2015).  Any remaining statutory uncertainty "is best addressed by rule drafters and policymakers, not bankruptcy judges."  *City of Chicago, Illinois v. Fulton*, 141 S. Ct. 585, 595 (Sotomayor, J., concurring).  In light of the foregoing principles, the Court will now address the statutory language of § 1409.

## V.    28 U.S.C. § 1409 Venue Statute and the Application of the § 1409(b) Small Dollar Exception

### a.    Plain Language of § 1409(b) Excludes Proceedings "Arising Under" the Bankruptcy Code

Venue for all proceedings in a bankruptcy case, including adversary proceedings, is governed by 28 U.S.C. § 1409.  Section 1409(a) clearly and unambiguously provides that venue of proceedings commenced in bankruptcy cases is, with very limited exceptions as set forth in the statute, proper in the district where the bankruptcy case is pending.  This extensive grant of venue in favor of the debtor's estate leaves little doubt that the statute strongly favors having bankruptcy proceedings before one unified tribunal.  With that clear mandate any exception to this basic principle must be unambiguous and clearly set forth in the language and scope of the statute.  The statute states in relevant part:

> (a) Except as otherwise provided in subsections (b) and (d), a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending.

> (b) Except as provided in subsection (d) of this section, a trustee in a case under title 11 may commence a proceeding arising in or related to such case to recover a money judgment of or property worth less than $1,375 or a consumer debt of less than $20,450, or a debt (excluding a consumer debt) against a noninsider of less than $25,000, only in the district court for the district in which the defendant resides.

*See* 28 U.S.C. § 1409(a) and (b).

Section 1409(a) broadly encompasses all proceedings over which a bankruptcy court has jurisdiction to hear, subject only to the limitations imposed by subsections (b) and (d). Notably, these restrictions are confined to actions brought by the trustee.[3]  *See* § 1409(b) and (d). The limitation imposed by § 1409(b) is further restricted solely to actions "arising in or related to" title 11 while making no mention of actions "arising under" title 11. Therefore, § 1409(a) applies to place the venue for actions "arising under" title 11 with the bankruptcy court where a debtor's case is pending.  *See In re Tadich Grill of Wash. DC LLC*, 598 B.R. at 69 (finding that §1409(a) applies to actions that arise under title 11 while § 1409(b) excludes them); *In re Bamboo Abbott, Inc.*, 458 B.R. at 706 ("The disparate use of an unambiguous and well defined bankruptcy term of art must be interpreted as an indication of Congressional intent that preference actions be excluded from the venue exception in subsection (b) where it included the same language in the general venue provision in subsection (a)"); *Moyer v. Bank of Am. (In re Rosenberger)*, 400 B.R. at 573 (concluding that Congress deliberately omitted the terms "arising under" from § 1409(b), leaving § 1409(a) as the controlling section for those proceedings).

---

[3] The limitation of § 1409(d) provides for a reversion back to regular federal venue rules if the proceeding is based on a claim arising after the commencement of the bankruptcy case from the operation of the debtor's business.

Faced with the clear language restricting subsection (b) to certain actions arising in or related to the underlying bankruptcy case, some courts have employed linguistic "workarounds" to support a conclusion that it applies to small-dollar preference actions as well.  In one of the earlier decisions on this issue, the Bankruptcy Appellate Panel for the 9th Circuit held that the terms "arising under" and "arising in" are not mutually exclusive for the purposes of § 1409(b). *In re Little Lake Indus.*, 158 B.R. at 484.  The basis of this conclusion rests primarily in an examination of subsection (c), which governs the venue of proceedings under, *inter alia*, section 544(b).  As the Court in *Little Lake* points out, this subsection incorrectly refers to § 544(b) causes of action as proceedings "arising in" or related to a bankruptcy case, when they are clearly proceedings "arising under" the bankruptcy case.  In order to make sense of the language of subsection (c) the Bankruptcy Appellate Panel concluded that Congress did not intend to exclude cases arising under title 11 from the restrictions in subsection (b).  Some courts have followed suit, including *Miller v. Hirn (In re Raymond)*, Nos. 08–82033, 09–6177 2009, WL 6498170 (N.D. Ga. Jun. 17, 2009).  Other courts have looked to the legislative intent of § 1409(b), pointing to comments to amendments to this section that it exists to "prevent unfairness to distant debtors of the estate, when the cost of defending would be greater than the cost of paying the debt owed."  H.R. REP. No. 595-95 (1977) *cited in Dynamerica Mfg., LLC v. Johnson Oil Co., LLC* (*In re Dynamerica Mfg., LLC*), Nos. 08–11515 (KG), 10–50759 (KG), 2010 WL 1930269 at *2 (Bankr. D. Del. May 10, 2010).  Another court has relied on these reasons above plus commentary in the National Bankruptcy Review Commission Final Report, which included a recommendation that § 1409 be amended to require that small-dollar preference actions against non-insider defendants be brought in the defendant's home court.  *In re Nukote Intern., Inc*., 457 B.R. at 682–83.

Having reviewed the case law and the statute carefully, and while the Court is appreciative of the thoughtfulness of courts who perceive an error that must be corrected, the language of § 1409 is unambiguous.  It is apparent that the "arising under" language is included in subsection (a) and omitted from subsection (b).  *See* § 1409.  Therefore, based on the lack of ambiguity, this Court will defer to the plain language of the statute as written by Congress.  The Supreme Court has made it clear that "'when the statute's language is plain, the sole function of the courts' – at least where the disposition required by the text is not absurd – 'is to enforce it according to its terms.'"  *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (quoting *United States v. Ron Pair Enters.*, 489 U.S. 235, 241 (1989)).  This Court is also guided by the rule of construction that "'where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'"  *Russello v. U.S.*, 464 U.S. 16, 23 (other citations omitted).  Because the language of this statute is clear and unambiguous, there is no need to resort to reviewing the Congressional record to divine the true intent of the statute.  In fact, if the Court were to treat "arising under" as the same as "arising in," then the reference to "arising under" in subsection (a) would be unnecessary.  This interpretation would run afoul of the rule of statutory construction that the Court must, if possible, give meaning to each word of a statute.  *In re Tadich Grill of Wash. DC LLC*, 598 B.R. at 69.

This Court does not have the authority to supplement § 1409(b) with language that Congress has neglected to include.  The words of a statute must be construed as enacted rather than as one might prefer.  *See Lamie v. U.S. Trustee*, 540 U.S. 526, 542 (2004) (quoting *United States v. Granderson*, 511 U.S. 39, 68 (1994) ("It is beyond our province to rescue Congress from its drafting errors, and to provide for what we might think ... is the preferred result.")

(Scalia, J., concurring); s*ee also City of Chicago, Illinois*, 141 S. Ct. at 595 (Sotomayor, J., concurring).  Even if it is the case that the omission was unintentional, the Court must not overstep its constitutional bounds.  *See Lamie*, 540 U.S. at 542; *and City of Chicago, Illinois*, 141 S. Ct. at 595 (Sotomayor, J., concurring)**.**  "The fact that Congress may not have foreseen all of the consequences of a statutory enactment is not a sufficient reason for refusing to give effect to its plain meaning."  *Union Bank v. Wolas*, 502 U.S. 151, 158 (1991) (citing *Toibb v. Radloff*, 501 U.S. 157, 164 (1991)).  The construction of § 1409 is clear to this Court.  Therefore, the Court finds that preference actions fall within the venue provisions of § 1409(a).

### b.    *Types of Proceedings that Fall Within the Scope of 28 U.S.C. § 1409(b)*

Having concluded that the venue restrictions imposed by § 1409(b) do not apply to preference actions, the Court must give meaning to the language of § 1409(b) and its application in bankruptcy cases.  If all adversary proceedings fall within § 1409(a) unless they are enumerated in subsections (b) or (d),[4] then which types of proceedings fall within subsection (b)?  This subsection has three components, each of which restrict the extent to which a bankruptcy trustee may bring a proceeding in the debtor's home court.  First a proceeding "to recover a money judgment of or property worth less than $1,375" must be brought in the district in which the defendant resides.  *See* § 1409(b).  A proceeding to recover a money judgment or property presumes that a finding has already been made that the defendant is liable to the estate for property or money.  Therefore, even if a preference action were found to "arise in" a bankruptcy case, it would not appear to fall within this category of these proceedings set forth in subsection (b) as preference actions are, first and foremost, proceedings to avoid transfers, not to recover

---

[4] Because the Defendant does not allege that 28 U.S.C. § 1409(d) is applicable to this proceeding, the Court shall not include a discussion of this subsection.

judgments.  In fact, some preference actions, such as those to avoid liens on property of the estate, do not involve recovery of a money judgment or property at all.  It would be incongruous to interpret this subsection to permit a trustee to bring an action to avoid the conveyance in the debtor's home court but require the same trustee to obtain a judgment against the defendant in another court.  *In re Tadich Grill of Wash. DC, LLC*, 598 B.R. at 70-71.

Second, a proceeding to recover a consumer debt of less than $15,000 must be brought in the district court for the district in which the defendant resides.[5]  Third, a proceeding to recover a non-consumer debt of less than $25,000 against a noninsider must be brought in the district court for the district in which the defendant resides.  A debt refers to an amount recognized as due and owing.  The term "debt" is defined as "a state of being under obligation to pay or repay someone or something in return for something received**:** a state of owing."  *Debt,* MERRIAM–WEBSTER, https://www.merriam-webster.com/dictionary/debt (last visited Jan. 25, 2021).  For the same reasons as discussed above, a proceeding to recover a fraudulent conveyance is not an action to recover a debt and does not fit within this definition, even if it were deemed to be an action "arising in" the bankruptcy case.  This provision would appear to apply to actions by a trustee to recover an obligation due and owing, such as a turnover action, and not an action to avoid a transfer.

### c.  *The Outcome Does Not Lead to Absurd Results*

Application of the statute's plain meaning does not lead to absurd results.  In a recent decision issued by Judge Seybert,[6] the court was faced with an attempt by a trustee to transfer a

---

[5] This provision regarding consumer debts is not applicable to this case and is not discussed herein.
[6] As a District Court Judge in the Eastern District of New York, this Court gives deference to the recent Opinion issued by Judge Seybert.

preference action to the defendant's home court based on § 1409.  *Novak, Tr. for Est. of OnlineAutoParts.com, LLC v. Parts Auth., LLC*, No. 20-CV-2948 (JS), 2020 WL 4034897 (E.D.N.Y. July 16, 2020).  The underlying bankruptcy proceeding was pending in the United States Bankruptcy Court for the District of Connecticut.  *Id* at *1.  In ruling on the motion, the court held that preference actions "arise under" title 11 and therefore do not fall within the ambit of § 1409(b).  *See id*.  Judge Seybert further explained that this proceeding could have been brought in the District of Connecticut under § 1409(a).  *Id.*  Ultimately, the court relied on 28 U.S.C. § 1412 and stated, "the Court finds that "judicial economy and the interests of justice are best served by transfer of this case" to the District of Connecticut."  *Id.*  Thus, the case was transferred back to Connecticut with specific recommendation that it be transferred back to the Bankruptcy Court where the debtor's case was pending.  *Id* at *2.

As illustrated by the outcome in *Novak*, enforcing the plain language of § 1409 does not lead to absurd results.  *See id*.  Rather, interpreting the statute according to its plain meaning promotes judicial economy and efficiency by keeping the majority of proceedings before the same court which is familiar with the bankruptcy case.

## VI.    *Ordinary Course of Business Defense*

The Defendant separately moves for summary judgment under an ordinary course of business exception pursuant to § 547(c)(2)(A).  Defendant asserts there is no genuine dispute as to any material fact with regard to the underlying business transaction between the Debtor and the Defendant.  The Defendant alleges that the Debtor, through its purchase of pet supplies, incurred a debt in the ordinary course of business and the Transfer was made in accordance with the parties' ordinary course of business.  Thus, the Defendant argues that the Transfer is subject to § 547(c)(2)(A) on summary judgment.  In support of the Motion, Defendant provided invoices

between the Debtor and the Defendant, an accounting of invoices and check payments, and an affidavit from an alleged accounts receivable supervisor. The Trustee disputes these allegations, asserting that an evidentiary hearing is required to resolve the issues.

The ordinary course of business exception restricts the Trustee's ability to avoid a preferential transfer. The statute states in pertinent part:

> (c) The trustee may not avoid under this section a transfer—
>
> . . . .
>
>> (2) to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was—
>>> (A) made in the ordinary course of business or financial affairs of the debtor and the transferee;

11 U.S.C. § 547(c)(2)(A). As this Court has previously held, an ordinary course of business defense pursuant to § 547(c)(2)(A) involves a subjective inquiry. *Estate of E.D.B. Constr. Corp. v. Roalef (In re E.D.B. Constr. Corp.),* Nos. 11-76129-reg, 13-8021-reg, 2013 WL 6183849 (Bankr. E.D.N.Y. Nov. 26, 2013) (citing *Davis v. All Points Packaging & Distrib., Inc. (In re Quebecor World (USA), Inc.),* 491 B.R. 363, 368 (Bankr. S.D.N.Y. 2013)).

> To determine whether a transfer was in the ordinary course of business under § 547(c)(2)(A), courts look at several factors including: (i) prior course of dealings of the parties; (ii) the amount of the payment; (iii) the manner of the payment; and (iv) whether the payment was the result of any pressure by the creditor or favoritism by the debtor.

*In re E.D.B. Constr. Corp.,* 2013 WL 6183849 at *6 (citing *Cellmark Paper, Inc. v. Ames Merch. Corp. (In re Ames Dep't Stores, Inc.),* 470 B.R. 280, 284–85 (S.D.N.Y. 2012)). The ordinary course of business exception involves a fact-intensive analysis that "should be decided only after trial." *See Buchwald v. Williams Energy Mktg. & Trading Co. (In re Magnesium Corp. of*

*America)*, 460 B.R. 360, 366 (Bankr. S.D.N.Y. 2011) (explaining that a great majority of the cases require a trial before reaching a decision on an ordinary course of business defense); *see also McDonald v. Little Limestone, Inc. (In re Powers Lake Constr. Co.)*, 482 B.R. 803, 808 (Bankr. E.D. Wis. 2012) (citing *IT Group, Inc. v. Anderson Equip. Co. (In re IT Group, Inc.)*, 332 B.R. 673, 677 n. 4 (Bankr. D. Del. 2005)) ("[T]he ordinary course of business defense is a highly fact-intensive issue, and it is rare indeed for it to be resolved in defendant's favor on a motion for summary judgment.").

The Defendant's claim under § 547(c)(2)(A) is not ripe for summary judgment.  The Complaint in this action was filed by the Trustee.  The Trustee did not take part in the Debtor's business transactions with the Defendant nor has he had the opportunity to assess the validity of the documents submitted by the Defendant.  The Trustee must be afforded the opportunity to reach his own conclusion on the allegations presented by the Defendant before a determination can be reached on the merits.  When drawing all reasonable inferences in favor of the Trustee, the Defendant has failed to satisfy the requisite burden of proof.  *Weinstock v. Columbia Uni.,* 224 F.3d 41 (2d Cir. 2000); *Carver Fed. Sav. Bank v. Cedillo (In re Cedillo),* 573 B.R. 405, 418 (Bankr. E.D.N.Y. 2017) (citing *Hayut v. State Univ. of N.Y.,* 352 F.3d 733, 743 (2d Cir. 2003)). Thus, the Court denies the Motion based upon the § 547(c)(2)(A) ordinary course of business

exception.

*Conclusion*

For the reasons set forth herein, the Motion is denied and an order memorializing this Memorandum Decision shall be entered forthwith. The Court will schedule a final pretrial conference in this adversary proceeding for February 24, 2021 at 9:30 a.m.



**Dated: Central Islip, New York**
**January 26, 2021**

_____
**Robert E. Grossman**
**United States Bankruptcy Judge**